A True Copy

Attest: ___Jolly A. Baught___
/ Clerk of Courts

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-07-726
STATE-CUM- 9/14/2007

STATE OF MAINE

v.

ORDER ON MOTION TO SUPPRESS

GREGORY M. HASKELL

INTRODUCTION

Pending is Haskell's motion to suppress evidence arising out of his detention on the side of the road during an investigation into an accident involving a driverless and damaged truck found on a beach in Scarborough on January 12, 2007. Haskell argues that seizure occurred when he was stopped by Sgt. O'Neil, a uniformed officer in a marked police vehicle with his service weapon. Haskell additionally argues that when Police Officer Roberts took his driver's license and did not return it to him, seizure occurred. At either point, Haskell did not feel free to leave. Alternatively, seizure occurred when the officer reached to take the keys from Haskell's hand because Haskell's silence is not acquiescence. The state counters that there was an ongoing accident investigation and neither roadside detention, nor the taking of the license amounted to seizure. The state further argues that even if Haskell were in custody, the search was incident to an arrest or the result of inevitable discovery. Alternatively, the state contends that the officers were performing a community caretaking function with a matter that started off as an accident and they were checking for the safety and welfare of the occupants of the truck. At the hearing, the court heard only from Officer Roberts, the lead officer on the investigation.

FACTS

At approximately 2:19 am, January 12, 2007, Officer Mark Roberts was dispatched to a truck on the beach near Black Point Road. Within a few minutes, the officer responded. The truck was on a sandy beach beyond the Yacht Club. Roberts

determined that the truck must have gone down the embankment, over the rocks and onto the beach. Roberts exited his vehicle and went down the stairs near the Yacht Club and over rocks to the beach where the truck was located. He looked outside and inside the truck; no one was around. Roberts, using a flashlight, discovered that the steering wheel was bent towards the windshield, appearing that someone had hit the wheel. Sergeant O'Neil arrived a few minutes later but he did not go down to the beach. O'Neil and Roberts checked out the Yacht Club to see if anyone had gone into the Club. O'Neil then drove down Black Point Road looking for persons who might be involved.[1] O'Neil notified Roberts that he had located someone walking up the beach. Roberts joined O'Neil and the individual who were standing on the side of the road next to the cruiser, approximately 100 yards from the Yacht Club.

Roberts spoke with the individual. At Roberts' request, the person displayed a picture ID identifying him as Gregory Haskell. Roberts held onto to Haskell's license. Roberts did not observe any sign of injury on Haskell's face. Roberts proceeded to ask a number of questions, including how he got there, where he had come from, trying to find out how the truck had ended up on the beach. Haskell told him that he was not driving, a friend was driving and he did not know what the friend's name was. In response to a question whether he had any weapons on him, Haskell reached into his pocket, pulled out his keys, reached out hand and said, "These are my keys." Roberts took the keys believing he had implied consent. Roberts pushed a button on the keys and lights on the truck went on.

Roberts could smell alcohol on Haskell. Haskell told him he had been drinking, but not driving. At this point, Roberts was still trying to find out who the driver was. He was investigating an accident with significant damage. The truck had traveled 25 feet over the cliff and Roberts was concerned that someone was injured. Roberts radioed dispatch to identify Haskell and then checked Haskell's license and warrant status. Haskell was not wanted, but his license was suspended. Roberts arrested Haskell for possession of a suspended license. Sgt. O'Neil transported Haskell to the jail.

---

[1] O'Neil was uniformed with his service weapon and traveling in a marked cruiser.

2

DISCUSSION

The Law Court has discussed the constitutional implications of a seizure that is a detention or stop:

> An encounter between a member of law enforcement and a citizen will implicate the protections of the Fourth Amendment only if the encounter constitutes a seizure of the citizen. A seizure occurs when the citizen's liberty is restrained by a law enforcement official such that the citizen "is not free to walk away."

*State v. Gulick*, 2000 ME 170, ¶ 10, 759 A. 2d 1085 (citations omitted). This type of "seizure" differs from an "arrest," which also includes the concept that the person is not "free to walk away," but does so in the context of circumstances consistent with formal arrest. *Id* at ¶ 10, n. 4. "A brief restriction on a citizen's right to walk (or drive) away is usually referred to as a detention or a stop in order to distinguish the more limited restriction from a restriction commensurate with arrest." *Id.*

Here, the totality of O'Neil and Roberts' actions following their approach to Haskell, including asking for his license, following up with questions about where he was coming from, and having Haskell wait while Roberts ran a check on the status of any warrants and of Haskell's right to operate a vehicle, constituted a detention, or seizure, for Fourth Amendment purposes. This court need not determine the precise instant of the seizure in this matter because the officers' actions were based on an initial articulable suspicion for the contact with Haskell, as explained below, and the entire course of the officers' actions were limited in scope and reasonable in relation to the circumstances that initiated the contact.

A citizen may be detained only when "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Dulac*, 600 A.2d 1121, 1122 (Me. 1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 21,

3

20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). This is the standard by which this court must examine the circumstances surrounding the officers' detention of Haskell to determine if that police action was reasonable. *See Gulick*, 2000 ME at ¶12. An officer may make brief intrusions "based upon reasonable and articulable (1) safety concerns; (2) suspicion that the defendant has committed a crime; or (3) suspicion that the defendant has committed a traffic infraction" without violating the Fourth Amendment. *Id.* at ¶ 13 (citations omitted). When O'Neil and Roberts approached Haskell on foot shortly after 2:19 am, they had a clearly articulated and objectively reasonable concern for the safety of anyone who may have been in the truck when it went over the cliff and dropped 25 feet to the beach. A police officer has a "legitimate role as a public servant to assist those in distress and to maintain and foster public safety." *Id.* at ¶ 14.

Roberts' request to see Haskell's license was a "minimal further intrusion," and the request itself does not need to be supported independently by a reasonable articulable suspicion if the subsequent actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at ¶¶ 15 and 16. This court concludes that Roberts' actions did not exceed the scope justified under the circumstances. The officers had a truck on the beach that had gone over a 25-foot cliff and the driving wheel of the truck was damaged. The officers found Haskell within 200 yards of the truck. It was reasonable for the officers to stop Haskell and inquire how he got there just after 2:19 am and whether he had been driving the truck. Haskell's response that he had been drinking but he did not drive the truck and that his friend had been the driver but he did not know his friend's name, together with the smell of alcohol on Haskell, provided additional information sufficient to support a request for Haskell's

4

license and to check whether there were any active warrants or whether Haskell's license was valid. Retrieving Haskell's keys from his outstretched hand to see whether the keys were from the truck (and the confirmation that the keys operated the truck) further permitted the officer to confirm or dispel his growing suspicions concerning whether there might be another injured person out there who had been driving the truck or whether Haskell had been driving the truck. This detention was reasonably related to the original purpose of stopping Haskell, that is a safety check of any possible injured driver or passenger from the truck.

The entry will be:

Defendant's motion to suppress is denied.

Date: September 12, 2007

Joyce A. Wheeler
Justice, Superior Court

5